UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Alexis Duncan,** <br> 8490 Upper Sky Way <br> Laurel, MD 20723 <br><br> Plaintiff, <br><br> v. <br><br> **Benjamin S. Carson, Sr., Secretary,** <br> **U.S. Department of Housing and** <br>     **Urban Development** <br> 451 7th St SW <br> Washington, DC 20410, <br><br> Defendant. | Civil Action No. _____ |

## COMPLAINT
(Employment Discrimination)

1. Plaintiff, Alexis Duncan, brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*, and 42 U.S.C. § 1981a, to remedy acts of discrimination in employment practices by the U.S. Department of Housing and Urban Development based on her race (African American), sex (female) and her complaints of discrimination (retaliation). Plaintiff alleges that Defendant denied her a supervisory position because of her race, sex and complaints of discrimination.

## JURISDICTION

2. This Court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-16(c).

## **VENUE**

3.\tPursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), venue is proper in this judicial district as the acts of discrimination and retaliation occurred in this district and plaintiff's personnel records are maintained by defendant in the District of Columbia.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

4.\tAll of the necessary administrative prerequisites for filing the above referenced claims have been met, as the agency issued a Final Agency Decision on April 15, 2019, which was received by Plaintiff on April 17, 2019. As such, this civil action is being filed within 90 days of receipt of the Final Agency Decision.

## **PARTIES**

5.\tPlaintiff Alexis Duncan is an African-American female. She is a citizen of the United States and of the State of Maryland.

6.\tDefendant Benjamin Carson is the Secretary and the head of the U.S. Department of Housing and Urban Development (HUD). HUD is a department within the government of the United States that has employed more than 500 persons in each of the last 20 weeks. Mr. Carson is here sued in his official capacity only.

## **STATEMENT OF FACTS**

7.\tAlexis Duncan is a licensed Certified Public Accountant.

8.\tMs. Duncan worked for Defendant from December 14, 2015 to July 8, 2016. as an Assessment Manager, Real Estate Assessment Center(REAC), Department of Housing and Urban Development in Washington, DC. Initially, her supervisor was Jill Rudy, who at various times, was designated as the Supervisor of the Reverse Auction Program and/or the Training Program. Samuel Tuffour, the REAC Program Manager was her second level supervisor. Her

third level supervisor was Delton Nichols, Deputy Director of REAC and Donald LaVoy, Deputy Assistant Secretary of REAC was her fourth level supervisor.

9. Ms. Duncan was hired as an Assessment Manager, GS-1101-14 under Job Announcement No. 15-HUD-1468. That job announcement states that the Assessment Manager would "[s]upervise a subordinate team of program and technical specialists."

10. The position description for an Assessment Manager provided that Ms. Duncan would be supervised by the Division Director and that she would supervise a team of financial managers and program specialists.

11. Ms. Duncan's offer of employment provided that REAC Program Manager, Samuel Tuffour, a black man, would be her direct supervisor. Mr. Tuffour serve as the head of the Physical Assessment Subsystem.

12. At the same time Plaintiff was hired, a white woman named Lara Phillbert, was also hired as an Assessment Manager under the same vacancy announcement.

13. Before Ms. Duncan and Ms. Phillbert were hired, Jill Rudy, a white woman, was the head of the Reverse Auction Program and the Training Program. When Ms. Philbert was hired, she was made the head of the Reverse Auction Program.

14. Ms. Phillbert was treated more favorably than Plaintiff because of her race. She was given a team of six subordinate employees to supervise, she was invited to attend training for supervisors, and she reported directly to Mr. Tuffour.

15. Although Ms. Duncan was hired to the Financial Management Program, Ms. Rudy, who continued to supervise the Training Program and who had no financial background or expertise in financial management, was designated as the head of the Financial Management Program.

16. Ms. Duncan was instructed to report to Jill Rudy who, in turn, reported to Mr. Tuffour. Other than the Plaintiff, all Assessment Managers in the Physical Assessment Subsystem reported directly to Mr. Tuffour and supervised their own teams.

17. Unlike, Ms. Phillbert, Plaintiff was never assigned staff to supervise and did not perform supervisory duties at any time during her tenure with HUD. She was not permitted to attend supervisory meetings or approve Time and Attendance for any employees. Defendant's organizational chart shows that she had no subordinates, she did not have a supervisory profile in Defendant's HR system, and she was not given a performance plan that reflected the supervisory duties outlined on the Assessment Manager (GS-14) position description.

18. Notwithstanding the specific provisions of the Vacancy Announcement and Ms. Duncan's position description, Mr. Tuffour dismissed Ms. Duncan complaints that she was being treated in an inequitable manner by stating that Ms. Duncan was hired specifically to reconcile accounts and that she was not hired to be a supervisor. Likewise, Ms. Rudy claims that Ms. Duncan was hired to serve in an accounting role, under the financial teams and with no supervisory duties.

19. However, REAC Deputy Director Delton Nichols, who was Mr. Tuffour's superior, claims that Ms. Duncan did, in fact, perform as a supervisor and was a supervisor of record with the agency. Likewise, REAC Deputy Assistant Secretary Donald Lavoy, who supervised Delton Nichols claimed that Ms. Duncan was assigned three employees to supervise.

20. When Ms. Duncan requested assistance from her managers because she was being treated in an abusive manner by a coworker who was also an African-American female, Jill Rudy and other managers discriminated against Ms. Duncan by refusing to take corrective action because of Ms. Duncan's race. Instead, Ms. Rudy dismissed Ms. Duncan's concerns stating that

Plaintiff and the coworker were "two black women" who did not get along. As a result, the black co-worker, who was not disciplined or even counseled not to yell at Ms. Duncan or demean her, continued to treat Ms. Duncan in an abusive manner.

21. Plaintiff complained to Delton Nichols about racial hostility and her lack of supervisory duties on several occasions.

22. On or about February 2016, Mr. Nichols told Jill Rudy to put Plaintiff on the supervisory performance plan. She did not.

23. On or about March 17, 2016, Plaintiff complained to Jill Rudy and Sam Tuffour that she was being treated less favorably than Lara Phillbert because, like Ms. Phillbert, she had been hired as a supervisor and therefore should be assigned supervisory duties. Rudy and Tuffour took no steps to assign her supervisory duties.

24. Ms. Duncan advised Mr. LaVoy on May 12, 2016, about racial hostility in the workplace and discussed her lack of supervisory duties. Mr. LaVoy did not take any steps to assign her supervisory duties.

25. Adam Hauptman, a white man under forty with no staff and no supervisory experience, also was treated as superior to Plaintiff. He was permitted to assign work to Plaintiff and direct her activities.

26. On May 11, 2016, Jill Rudy held a meeting with Plaintiff discussing the terms and conditions of her employment and her status as a supervisor, and included Adam Hauptman–who was the same grade as Plaintiff and not a supervisor. It was professionally humiliating for Plaintiff to have to discuss her performance, the terms and conditions of her employment, and her managerial status in front of Adam Hauptman.

27. At the May 11 meeting, Mr. Hauptman stated that Mr. LaVoy wanted him to supervise the Plaintiff.

28. On May 16, Mr. Lavoy denied to Ms. Duncan that he wanted Mr. Hauptman to supervise her.

29. On June 2, 2016, Mr. Tuffour announced by email that Mr. Hauptman would, in fact, supervise Ms. Duncan, among others. The email said that Mr. Hauptman would replace Ms. Rudy (who was never qualified in the first place) as the supervisor of the Financial Management Team--which included Plaintiff.

30. Mr. Hauptman was permitted to run the financial management team despite the fact that he had never supervised anyone and was junior to Plaintiff.

31. Mr. Hauptman was permitted to attend supervisory training but Plaintiff was not.

## STATEMENT OF CLAIMS

32. As previously stated herein above, defendant, through its subordinate management, has discriminated against Plaintiff on the basis of her race, sex and in retaliation for her prior protected activity.

35. As a consequence of such race-based discrimination and retaliation, Plaintiff has suffered and continues to suffer career damage, as well as personal and professional humiliation, and emotional pain, as well as lost salary and benefits, including retirement benefits. Plaintiff suffered from insomnia, weight gain, intense physical pain, and headaches. Plaintiff has been diagnosed with anxiety and depression related to her job. She has also had to shoulder the financial burden of therapy as well as the complications that a diagnosis of anxiety adds to insurance.

36. Plaintiff suffered the loss of her job on July 9, 2016, as it was necessary to leave

her employment with Defendant in order to protect herself. Plaintiff was anxious on a daily basis that she might lose her job. She felt humiliated because everyone there knew that she was hired as a supervisor and that she wasn't functioning as one and that she had someone placed over her as if she couldn't do the job.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests that this Court enter judgment in her favor and against defendant on the claims of unlawful discrimination in violation of Title VII of the Civil Rights Act, and provide her with the following relief:

(a) award Plaintiff compensatory damages against Defendant in the amount of $300,000.00, plus interest thereon;

(b) order Defendant to reinstate plaintiff as a Grade 14 Assessment Manager with the duties and responsibilities described in the official position description of an Assessment Manager;

(c) order Defendant to correct Plaintiff's personnel file to reflect that she performed at the GS-14 Supervisory level;

(d) award Plaintiff back pay including contributions to retirement ffrom July 8, 2016 to the time of reinstatement;

(e) enjoin Defendant from further discriminating against Plaintiff;

(f) award Plaintiff the costs of bringing and maintaining this civil action and the administrative complaints that necessarily preceded it, including reasonable attorneys' fees; and

(g) award Plaintiff such other and further relief as the interests of justice may require.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues of fact, including the measure of damages.

Respectfully submitted,

/s/*Ellen K. Renaud*
Ellen K. Renaud
Bar No. 479376
SWICK & SHAPIRO, P.C.
1101 15th Street, N.W.
Suite 205
Washington, DC 20005
Tel (202) 842-0300
Fax (202) 842-1418
Email - ekrenaud@swickandshapiro.com

Attorney for Plaintiff