UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXIS DUNCAN,<br><br>  Plaintiff,<br><br>  v.<br><br>MARCIA FUDGE, Secretary, U.S. Department of Housing and Urban Development,<br><br>  Defendant. | Case No. 1:19-cv-2113 (TNM) |

## MEMORANDUM ORDER

Alexis Duncan brings this employment discrimination suit against the Secretary of Housing and Urban Development (HUD) alleging race and sex discrimination in violation of Title VII. *See* 42 U.S.C. § 2000e *et seq.* Duncan also claims HUD employees unlawfully retaliated against her for reporting that discrimination. The Secretary now moves for summary judgment. *See* Mot. for Summ. J., ECF No. 20. Reviewing the evidence, the Court finds a genuine dispute of material fact as to Duncan's race-discrimination claim. Summary judgment is therefore denied for that cause of action. Duncan forfeited the remaining claims by failing to brief them.

I.

In 2015, HUD posted a hiring notice for an "Assessment Manager." *See* Opp'n to MSJ, ECF No. 21, Ex. 12 (Position Notice). The notice explained the Assessment Manager would work as a "supervisor located in the Real Estate Assessment Center (REAC)." *Id.* Duncan, a certified public accountant, was hired into that position and assigned to assist in a large financial-

reconciliation project within REAC. *See* Opp'n to MSJ, Ex. 13 (Hiring Notice); MSJ, Ex. B (Duncan Depo.) at 32:13–15. She started in December 2015. *See* Opp'n to MSJ, Ex. 13.

At least five other HUD employees worked on the reconciliation project, too—Sharath Jangapalli, Adam Hauptman, Jill Rudy, Sam Tuffour, and Shalene Domingo. MSJ, Ex. B (Duncan Depo.) at 34:18–35:5. Based on the Assessment Manager's position-description, Duncan thought she would supervise at least some of those employees. *See id.* at 20:14–24. But Duncan never received supervisory responsibilities nor was she introduced as a supervisor. *See* Opp'n to MSJ, Ex. 1 at 25–26. The Secretary explains that discrepancy in two ways. First, she says Duncan's first- and second-line supervisors were not told she was hired as a supervisor. *See* Def.'s Memo in Supp. 3, ECF No. 20-1 (citing MSJ, Ex. 3 (Rudy Aff.) at 2; Ex. 4 (Tuffour Aff.) at 2; Ex. 2 (Duncan Depo.) at 43:3-7).[1] Second, the Secretary says an error in HUD's computer system made it *appear* as if Duncan was supervising employees, when in reality those employees reported to another supervisor. *See id.* (citing MSJ, Ex. B (Duncan Depo.) at 28:14–29:6; Ex. A (Duncan Aff.) at 12; Ex. E (Nichols Depo.) at 50:15-51:8, 51:13-16). Dissatisfied with the situation, Duncan left HUD just six months after beginning work there. *See* MSJ, Ex. 2 at 7:13–15.

Duncan eventually filed this federal employment discrimination lawsuit. In her complaint, Duncan alleged employees of HUD discriminated against her because of her race and sex by failing to assign her supervisory responsibilities and retaliated against her for reporting that discrimination. *See* Compl. 6. She sought damages in excess of $300,000, reinstatement to

---

[1] The Secretary provides a helpful breakdown of Duncan's chain of command: "At the time she was hired, Ms. Duncan's first-line supervisor was Jill Rudy (a white female), her second-line supervisor was Sam Tuffour (an African American male), her third-line supervisor was James Cruiskshank, her fourth-line supervisor was Delton Nichols (an African American male), and her fifth-line supervisor was D.J. Lavoy (a white male)." Def.'s Memo in Supp. 2 (cleaned up).

her position at HUD with supervisory duties, a correction of the employee-designation in her personnel file, back pay, an injunction preventing further discrimination, as well as costs and fees. *Id.* at 7. The Secretary moved for summary judgment. The parties have submitted responsive briefing and the motion is now ripe for resolution.[2]

## II.

"A party may move for summary judgment" on grounds "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law," and a dispute about a material fact is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008). As the movant here, the Secretary bears the burden of proving the absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether she has carried that burden, the Court will "review all evidence in the light most favorable to the nonmoving party and draw all inferences in [her] favor." *Keister v. AARP Benefits Comm.*, 410 F. Supp. 3d 244, 250 (D.D.C. 2019) (citing *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam)).

The "governing law" of this suit is Title VII, which makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To determine whether the Secretary is entitled to summary judgment under Title VII, the Court applies the familiar *McDonnell Douglas* framework. *See*

---

[2] The Court has subject matter jurisdiction over this dispute. *See* 28 U.S.C. § 1331; 42 U.S.C. § 2000e–5(f)(3); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 505 (2006).

3

*Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under *McDonnell Douglas*, it is the plaintiff's burden to establish a prima facie case of discrimination by a preponderance of the evidence." *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002). Once the plaintiff satisfies that initial burden, the employer "must then articulate a legitimate nondiscriminatory reason for its actions." *Id.* Then it falls to the plaintiff to show "the employer's stated reason was pretextual and that the true reason was discriminatory." *Id.*

At summary judgment, if "an employer has asserted a legitimate non-discriminatory reason for the [challenged action], [a] district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). "Rather, . . . the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason." *Id.* Such evidence may include "the employer's better treatment of similarly situated employees outside the plaintiff's protected group, [the employer's] inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group . . . , or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015).

### III.

Now to apply those standards here. The Secretary offered a two-part explanation for why Duncan received no supervisory responsibilities—she says (1) Duncan's first- and second-line supervisors were unaware that she was hired as a supervisor, and (2) a software error made it

appear as if Duncan was assigned subordinates upon arrival at HUD, when in reality she was not. Def's Memo. in Supp. 3.  Following *Brady*, the only question is whether Duncan has proffered evidence from which a jury could find those explanations are a pretext for discrimination.  The Court finds Duncan has carried her burden as to the race-discrimination claim for two reasons.

*First*, although software issues and a chain-of-command miscommunication explain why Duncan was not *initially* assigned supervisory responsibility, they may not explain why Duncan was *never* assigned such responsibilities in her six-month tenure at HUD.  The summary judgment evidence shows Duncan's first-line supervisor Jill Rudy was told as early as March, 2015, that Duncan was hired as a supervisor and should have supervisory duties.  *See* Opp'n to MSJ, Ex. 9 (Deposition of Jill Rudy) at 24:22–25:3 ("Q: [A]fter a few months of Ms. Duncan working for you, Jeff Nichols told you that she was hired as a supervisor, is that right? A: Correct.").  It is no response to say Rudy was "leaving it up to the front office" because "there wasn't anybody [] to supervise."  *See* Reply at 8.  As the Secretary's own evidence shows, Nichols (a "front office" supervisor) directed Rudy to ensure Duncan had subordinates.  *See* Reply, Ex. A 53:9–11 ("I indicated to . . . either to Mr. Tuffour or Ms. Rudy to make sure [] there were employees assigned to Ms. Duncan.").  And there were at least three other non-supervisory employees assigned to the reconciliation project Duncan was hired to lead: Sharath Jangapalli, Adam Hauptman, and Shalene Domingo. MSJ, Ex. B (Duncan Depo.) at 34:18–35:5.  Taken together, this evidence casts doubt on the Secretary's explanation.

*Second*, Rudy made a remark suggesting the continued failure to assign Duncan supervisory responsibilities was "at least in part[] for a prohibited reason."  *Pauling v. District of Columbia*, 286 F. Supp. 3d 179, 205 (D.D.C. 2017).  When Domingo and Duncan got into an argument, Rudy allegedly characterized them as "just two black women who could not get

along."  MSJ, Ex. 5 (Duncan Depo.) at 52:21.  Circuit precedent suggests such a remark supports an inference of racial animus.  *Cf. Evans v. Sebelius*, 716 F.3d 617, 622 (D.C. Cir. 2013) ("[A] reasonable jury could interpret as racially insensitive" a supervisor's reference to African American staff as "those sisters."); *Walker*, 798 F.3d at 1092 (noting that a plaintiff may rely on any "relevant evidence that a jury could reasonably conclude evinces an illicit motive").  And recall that the Court must draw such an inference in Duncan's favor.  *Tolan*, 572 U.S. at 655–56.

The Secretary would disregard Rudy's comment because Duncan "fails to identify 'any relation' between the 'proffered statement' and the 'adverse employment action at issue."  Reply 12.  The Court disagrees.  Rudy was Duncan's first-line supervisor and the person who allegedly failed to assign Duncan supervisory responsibility, even after being told to do so by Nichols.  Rudy's remark thus *directly* connects the complained-of adverse action to evidence supporting an inference of racial animus.  *Cf. Evans*, 716 F.3d at 621–622.[3]

Lastly, the sex-discrimination and retaliation claims.  In her Opposition, Duncan exclusively argued the Secretary is not entitled to summary judgment on the race-discrimination claim.  *See* Opp'n to MSJ 6–15.  "As a plaintiff opposing summary judgment, it was [Duncan's] burden to identify evidence that a reasonable jury could credit in support of each essential element of her claims."  *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015).  By failing to do so, Duncan forfeited opposition to summary judgment on the remaining sex-discrimination and retaliation claims.  *See Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C.

---

[3] To advance this point the Secretary relies on the D.C. Circuit's opinion in *Pauling v. District of Columbia*.  *See* MSJ 18 (citing 823 F.3d 701, 710 (D.C. Cir. 2016)); Reply 12 (same).  The problem is, there's no such case.  The "any relation" language comes from *a district court's* opinion, *see* 286 F. Supp. 3d at 206, which does not bind this Court.

Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded.").

## IV.

In sum, Duncan has offered enough evidence that a "reasonable jury" could find the Secretary's proffered nondiscriminatory reason is a pretext for race discrimination. *Brady*, 520 F.3d at 494. Summary judgment must be denied as to that claim. The remaining sex-discrimination and retaliation claims are forfeited. The Court notes, however, that Duncan's limited success at summary judgment does not necessarily portend success at trial. Summary judgment standards heavily favor nonmovants. At trial, by contrast, Duncan's evidence will have to win the day, showing the Secretary's nondiscriminatory reasons for the alleged adverse employment action are more likely than not a pretext for racial discrimination. It remains to be seen whether Duncan can shoulder that more substantial burden.

For all these reasons, it is hereby

**ORDERED** that the Secretary's [20] Motion for Summary Judgment is DENIED as to Duncan's race-discrimination claim; and it is also

**ORDERED** that the Secretary's [20] Motion for Summary Judgment is GRANTED as to Duncan's sex-discrimination and retaliation claims.

**SO ORDERED**.

Dated: November 27, 2021                                     TREVOR N. McFADDEN, U.S.D.J.